IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SONIMAR OJEDA CALDERON,

    Plaintiff,

    v.                                        CIVIL NO. 06-1535 (RLA)

MOLLY MAID, INC., et al.,

    Defendants.

## ORDER IN THE MATTER OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Codefendant BLUE BAY PROFESSIONAL SERVICES, INC. has moved the court to dismiss the discrimination claims asserted under our federal jurisdiction and to decline supplemental jurisdiction. Specifically, defendant alleges that the comments purportedly made by EDDIE CARDONA are not pervasive enough to constitute a hostile environment; that this claim is time barred; that plaintiff failed to make a prima facie case of retaliation, and that plaintiff was discharged for legitimate business reasons. The court having reviewed the memoranda filed by the parties as well as the evidence submitted therewith hereby finds that dismissal of the federal claims are warranted.

### BACKGROUND

Plaintiff instituted this action alleging sex discrimination pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Specifically, plaintiff alleges that she was subjected to sexual harassment by EDDIE CARDONA, owner of the movant

CIVIL NO. 06-1535 (RLA)                                        **Page 2**

corporation, and that she was terminated from employment for refusing his sexual advances.

Additionally, plaintiff alleges discrimination and wrongful termination under various local statutes.

## THE FACTS

The following material facts are uncontested based on the evidence submitted by the parties.

Plaintiff commenced working for MOLLY MAID on **March 17, 2004.**

Plaintiff was initially recruited as a house cleaning employee.

Approximately one month after she started working for MOLLY MAID plaintiff was reassigned to an office position where she would make estimates, work with the files, answer the telephone, supervise the routes, prepare the chemicals and solve any problems that arose during the day.

EDDIE CARDONA was the owner and president of the MOLLY MAID franchise where plaintiff was employed.

On **December 16, 2004,** plaintiff reported for a second time to the Puerto Rico State Insurance Fund ("SIF") and was ordered to rest effective that date.

On **December 20, 2004,** plaintiff was mailed a termination letter.

Plaintiff filed a sexual discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on **October 17, 2005.**

### SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 660-61 (1st Cir. 2000); <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997).  A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. <u>Morris v. Gov't Dev. Bank of Puerto Rico</u>, 27 F.3d 746, 748 (1st Cir. 1994); <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).  A fact is material if it might affect the outcome of a lawsuit under the governing law. <u>Morrissey v. Boston Five Cents Sav. Bank</u>, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" <u>Poulis-</u>

Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominquez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v.

**CIVIL NO. 06-1535 (RLA)**                                    **Page 5**

Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## TITLE VII

Sex discrimination encompasses sexual harassment in the work setting. Depending on the circumstances, harassment may turn into a hostile work environment or a *quid pro quo* situation. "Sexual harassment, whether by means of a co-worker's demands for sexual favors as a '*quid pro quo*' or by the employer's creation or tolerance of a hostile and abusive work environment, constitutes discrimination prohibited by Title VII." Gorski v. New Hampshire Dep't of Corrections, 290 F.3d 466, 472 (1st Cir. 2002).

CIVIL NO. 06-1535 (RLA)                                           **Page 6**

---

### Hostile Work Environment

The protection against discrimination in employment based on sex provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) has been expanded to areas beyond strictly "economic" and "tangible discrimination" to situations where "sexual harassment is so severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment." Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662, 675 (1998) (citations, internal quotation marks and brackets omitted); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 302 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49, 60 (1986); Carmona-Rivera v. Puerto Rico, 464 F.3d 12, 14 (1st Cir. 2006); Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); Noviello, 398 F.3d at 92.

Defendant argues that the alleged conduct was not pervasive enough to constitute an abusive working environment. Because we find the hostile environment claim untimely, we need not address defendant's argument on this issue.

### Timeliness

Defendant also argues that plaintiff's hostile work environment claim is time-barred.

Prior to resorting to the courts for relief, plaintiffs must present their discrimination claims under Title VII to the appropriate agency. "In light of the statutory scheme, it is unsurprising that, in a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). "In order to prosecute a [Title VII] claim... an aggrieved party must first file a timely administrative complaint." Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005). "[P]laintiffs [may] not proceed under Title VII without first exhausting administrative remedies." Lebron-Rios v. U.S. Marshal Service, 341 F.3d 7, 13 (1st Cir. 2003); "Title VII requires that an aggrieved individual exhaust his or her administrative remedies as a prerequisite to filing suit in federal court." Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003). "Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period (usually 180 or 300 days) after the discrimination complained of". Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 3 (1st Cir. 2001); "[A] claimant who seeks to recover for an asserted violation of... Title VII, first must exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits.... This omission, if unexcused, bars the courthouse door, as courts long have recognized

2281bd2b69ef0cd5

that Title VII's charge-filing requirement is a prerequisite to the commencement of suit." <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 (1st Cir. 1999).

The purpose behind the exhaustion requirement is to give the employer timely notice of the events as well as provide an opportunity for an early amicable resolution of the controversy. "That purpose would be frustrated... if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 454, 464 (1st Cir. 1996).

In Puerto Rico, an aggrieved employee has 300 days from the occurrence of the employment action complained of to file an administrative charge in instances where the local Department of Labor is empowered to provide relief, i.e., in instances of "deferral" jurisdiction. <u>Bonilla</u>, 194 F.3d at 278 n.4; <u>Lebron-Rios</u>, 341 F.3d at 11 n.5. Otherwise, the applicable period is 180 days. *See*, 42 U.S.C. § 2000e-5(e)(1).[1]

---

[1]  In pertinent part, § 2000e-5(e)(1) reads:

> A charge under this section shall be filed within **one hundred and eighty days** after the alleged unlawful employment practice occurred... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto... such charge shall be filed by or on

CIVIL NO. 06-1535 (RLA)                                        **Page 9**

---

In <u>Nat'l R.R. Passenger Corp. v Morgan</u>, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) the Supreme Court redefined the factors to be used by the courts in examining allegations of continuing violations and did away with the "systemic" or "serial" dichotomy previously used for extending the limitations period. "<u>Morgan</u> eliminates the need for juries to determine whether there was a systemic or serial violation in order to invoke the continuing violations doctrine". <u>Crowley v. L.L. Bean, Inc.</u>, 303 F.3d 387, 410 (1st Cir. 2002). The Supreme Court distinguished instead between "discrete discriminatory acts" and "hostile work environment claims" for purposes of determining the timeliness of Title VII actions.

According to the Supreme Court, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." <u>Morgan</u>, 536 U.S. at 112. The Supreme Court went on to list specific events which it concluded constituted distinctive actionable claims which marked the term for the limitations period to run.

Discrete acts such as **termination, failure to promote, denial of transfer, or refusal to hire** are easy to

---

behalf of the person aggrieved within **three hundred days** after the alleged unlawful employment practice occurred.

(Emphasis ours).

identify.   Each  incident  of  discrimination  and  each retaliatory  adverse  employment  decision  constitutes  a separate actionable "unlawful employment practice." Morgan, 536 U.S. at 114 (emphasis ours).

On the other hand, "[h]ostile environmental claims are different in kind from discrete acts.   Their very nature involves repeated conduct... The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115. "As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole." Morgan, 536 U.S. at 117.

Illustrating the underlying difference between hostile work environment claims and other discrimination claims, the Court of Appeals in Campbell v. Bankboston, N.A., 327 F.3d 1, 11 (1st Cir. 2003) stated that the limitations period for an alleged discriminatory change in retirement benefits plan began to run upon plaintiff being advised of the decision. Likewise, following the Morgan precedent in Rosario-Rivera v. P.R. Aqueduct and Sewers Auth., 331 F.3d. 183, (1st Cir. 2003) the court rejected plaintiff's notion

that two employment transfers were part of a continuing violation for purposes of the [Title VII] limitations period under a hostile work environment scheme.  Rather, the court specifically determined that each such transfer constituted "'a separate and actionable unlawful employment practice.'" *Id.* at 188-89 (citing <u>Morgan</u>, 536 U.S. at 114).  *See also*, <u>Dressler v. Daniel</u>, 315 F.3d 75 (1st Cir. 2003) (two separate claims with individual limitations period accruing from the denial of prospective employment and termination from employment); <u>Miller v. New Hampshire Dept. of Corrections</u>, 296 F.3d 18, 22 (1st Cir. 2002) (distinguishing "a discrete act of discrimination - as opposed to a pattern of harassing conduct that, taken as a whole, constitutes a hostile work environment [and falls within the continuing violations exception to the limitations period]." *Accord*, <u>Marrero v. Goya de Puerto Rico, Inc.</u>, 304 F.3d 7 (1st Cir. 2002) finding hostile work environment claims timely under the <u>Morgan</u> premise.

In this regard it is important to distinguish between the alleged individual acts constituting a pattern of harassment and plaintiff's claim for termination from employment which we previously found was timely.[2] Thus, we must ascertain whether any of the alleged harassing events occurred within the preceding 300 days.

_____

    [2]  See Order in the Matter of Defendants' Motion to Dismiss (docket No. 27).

CIVIL NO. 06-1535 (RLA)                                          **Page 12**

According to plaintiff, she was subjected to numerous unwanted sexual comments and invitations by MR. CARDONA which created a hostile work environment.

It is undisputed that plaintiff filed her EEOC charge on **October 17, 2005** which would cover discriminatory events back to **December 22, 2004.** However, it appears from the record that plaintiff left the office on **December 16, 2004,** as per the SIF physician's instructions, never to return inasmuch as she was discharged via a letter mailed to her on December 20, 2004, while she was still on leave.

In view of the above and plaintiff having failed to submit evidence of any harassing conduct during the period of time that she was on SIF leave, we find that her hostile environment claim is time-barred.

### *Quid Pro Quo*

Plaintiff avers that her employment was terminated for discriminatory reasons. Specifically, she alleges that it was due to her rejection of MR. CARDONA's sexual advances.

"Within the broad category of workplace sexual harassment prohibited by Title VII, there are various types of harassment claims, each generally treated by courts as analytically distinct from the others. For example, there are *quid pro quo* harassment claims, there are hostile work environment claims, and there are retaliation claims." Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st 2007). "*Quid pro* quo sexual harassment also violates

Title VII. In this form of harassment, an employee or supervisor uses his or her superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." Valentin-Almeyda, 447 F.3d at 94 (quotations and citations omitted); O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). "Sexual harassment, whether by means of a co-worker's demands for sexual favors as a '*quid pro quo*' or by the employer's creation or tolerance of a hostile and abusive work environment constitutes discrimination prohibited by Title VII." Gorski, 290 F.3d at 472.

"[T]he terms *quid pro quo* and hostile work environment... illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general". Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The termination letter adduced that plaintiff's dismissal was based on her "[f]requent insubordination" and "[f]requent lack of respect and high tone of voice when addressing the employer and its employees."

Plaintiff, on the other hand, claims that she was dismissed from her employment because she rebuked MR. CARDONA's advances.[3]

---

[3]   According to plaintiff, in June 2004, MR. CARDONA told her that he wanted to take a cruise with her. Some time later on, he insisted on taking plaintiff out to dinner on a Saturday night for Mexican food and listen to mariachis. MR. CARDONA also asked her what kind of man she liked.

Additionally, she pointed out that she had never been reprimanded and even submitted a letter recognizing her as employee of the month in April 2004.

Based on the foregoing, there are issues of material fact regarding the reason for plaintiff's termination from employment which preclude summary judgment on her discriminatory termination claim under Title VII.

### Retaliation

Defendant has petitioned that plaintiff's Title VII retaliation claim be dismissed.

Title VII proscribes retaliation by an employer based on an employee's complaint of discriminatory practices. 42 U.S.C. § 2000e(3)(a). A prima facie retaliation showing requires that plaintiff present evidence that: (1) she engaged in Title VII protected conduct; (2) experienced an adverse employment action; and (3) there is a causal connection between the protected conduct and the ensuing adverse action. Pomales v. Celulares Telefonica, Inc. 447 F.3d 79, 84 (1st Cir. 2006); Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005); Che v. Mass. Bay Tranp. Auth., 342 F.3d 31, 38 (1st Cir. 2003); Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003); Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002); Marrero v. Goya, 304 F.3d at 22. "Once the plaintiff has made a prima facie showing of retaliation, the McDonnell Douglas burden-shifting approach is employed, and defendant must articulate a legitimate,

non-retaliatory reason for its employment decision. If the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 26 (1st Cir. 2004); Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003); Che, 342 F.3d at 39. Should the employer advance a legitimate reason for its decision, "the ultimate burden falls on the plaintiff to show that the employer's proffered reason is pretext masking retaliation...." Mesnick, 950 F.2d 816, 827 (1st Cir. 1991).

Assuming plaintiff has in effect plead a cause of action for retaliation based on the federal anti-discrimination statute, we find the evidence lacking. The record is devoid of any protected conduct which would serve as a basis for the retaliation. As a matter of fact, plaintiff indicated that she never complained of the alleged comments to anyone.

### SUPPLEMENTAL JURISDICTION

The court having declined to dismiss all the Title VII claims, the request to decline supplemental jurisdiction is **DENIED**.

### CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by codefendant BLUE BAY PROFESSIONAL SERVICES, INC. (docket No. **39**)[4] is disposed of as follows:

---

[4]  Plaintiff's Opposition (docket No. **48**).

CIVIL NO. 06-1535 (RLA)                                      Page 16

-    Plaintiff's sexual harassment claim pursuant to Title VII
     is **DISMISSED** as time-barred.

-    The petition to dismiss plaintiff's *quid pro quo* claim
     pursuant to Title VII is **DENIED.**

-    Plaintiff's retaliation claim pursuant to Title VII is
     **DISMISSED.**

-    The petition to dismiss plaintiff's supplemental claims is
     **DENIED.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 23rd day of September, 2008.


                                    S/Raymond L. Acosta
                                   RAYMOND L. ACOSTA
                              United States District Judge